* W. J. RODDEY v. J. N. TALBOT.

*Action on Note—Contract—Consideration—Payment of Premium on Life Insurance Policy.*

1. A father gave a note for the first premium on a life insurance policy, taken out by his son, in consideration that the policy should be made payable to him and his heirs. The policy when issued was made payable to him, and after his death, to the son, and he made no objection until after the maturity of the note: *Held*, that the failure of the maker of the note to give notice of his objection to the form of the policy within a reasonable time after acquiring knowledge of its precise terms was a waiver of his right to object to it.

2. The benefit of the policy for the year, with the privilege of continuing it in force for the lifetime of the father, constituted a partial consideration for the note given by him.

3. The fact that the note was given to an individual instead of to the company which issued the policy is immaterial.

This was a CIVIL ACTION, tried before *Bryan, J.,* and a jury, at May Term, 1894, of the Superior Court of CUMBERLAND County.

The issues and responses were as follows:

"Did the defendant J. N. Talbot, on December 18, 1890, execute a note to W. J. Roddey for $97.65, payable on October 1, 1891? Answer. 'Yes.'

"2. Was there a total failure of consideration of the note made by J. N. Talbot to W. J. Roddey? Ans. 'Yes.'"

This action was instituted in a Justice's Court upon a note for $97.65, executed by the defendant to the plaintiff, dated December 18, 1890, and payable October 1, 1891. The plaintiff pleaded the general issue and total failure of consideration. There was an appeal to the Superior Court. The plaintiff proved the loss of the note and its execution.

*MACRAE, J., did not sit on the hearing of this case.

Mr. H. F. Adicks, witness for the plaintiff testified: " I drew the note for $97.65, dated the 18th day of December, 1890, and due October 1, 1891, at the Bank of Fayetteville, signed by the defendant and payable to the plaintiff. I was selling life insurance. Mr. Roddey was a banker and the agent of the Equitable Life Insurance Company. The note was given for money to be advanced by Mr. Roddey for premium on policy on the life of the defendant's son. His son was a minor. Mr. Roddey lived in South Carolina. Roddey advanced the money to the Equitable Company. He advanced $93; $97.65 included the interest. I turned over to the assured a receipt for the money. The policy is the receipt. I also signed a receipt for Mr. Talbot for the note in suit, the consideration, etc. The note was for $97.65. Mr. Talbot did not ask Mr. Roddey to advance anything. I approached the defendant, made a proposition and he accepted. It was that, as his son was not of age, if the defendant would give a note Mr. Roddey would carry it until October 1, interest added in. The Equitable required the premiums to be paid in cash." The plaintiff asked the witness whether the proposition in question was reduced to writing, and if there was any other proposition that was not reduced to writing. The witness answered that all propositions were in writing. The witness further testified that the defendant agreed to sign the note with the understanding that the young man, his son, was to pay him in labor, that he was working for him. He then objected, that his son might run off and leave him before the year was out, and requested that we should make him the beneficiary. The witness further said, upon cross-examination, that he did not propose to credit $20 upon the note upon the defendant paying him $5. The defendant asked the witness how much he was to get out of the $97.65. The plaintiff objected. Objection overruled, and plaintiff excepted.

The witness answered: " I was working for wages, and it

made no difference whether the note was paid or not. Mr. Wiley Malloy was with me at the time of this transaction in 1890. I employed Mr. Malloy in 1890 for about thirty days. I was working for a salary in 1890. 'The policy was issued on January 10, 1891. The policy was under contract of 1890." The policy, a copy of which is hereto annexed and made a part of this case, was introduced by the defendant and read. " I live in South Carolina."

The defendant John N. Talbot, a witness for himself, testified : " Adicks wanted my son Greeley to give security on that note. Greeley said if he had to give security he would have no policy. He was under age. Adicks said he was sorry that he (Adicks) did not get note. I said that it was not my fault. I said, ' Mr. Adicks, there is only one way in which I will take the insurance policy. If the policy is made to me and my heirs I will give note.' I asked Mr. Malloy if this was not the proper way. He said that it was. It was upon that condition that I gave the note. I have never received the policy. I never saw it. After I gave the note he said if I would give him $5 he would give me credit for $20; that he was hard up. I refused. He never gave me anything for the note. On September 1st I will be seventy-four years old. *I am a farmer.*"

Cross-examined, he said : " Greeley is now 21 or 22 years old. He has lived with me always. My son told me when he received the policy that he had received it. I can't tell when I first saw the policy. It may have been a week after he received it. The policy was sent to my son. I did not see the policy a great number of times. I made objection to Adicks, after the maturity of the note, for the first time, that the policy was not made payable according to the understanding. Mr. Haigh notified me that he had the note at the bank for collection. A short time after that I saw Adicks at the Hotel LaFayette. I told him I would pay if he would give me a policy such as I bargained for. The

115—19

first time I saw Adicks, when I gave the note, was in January or February, and I gave the note when I saw him in the lane. At the time that I gave the note he did not have the policy." The witness stated that he had not made any objection to Adicks until he saw him at the hotel, after the maturity of the note. Adicks said that he could not change the policy. The witness further said that he had not written to the company or its agent about the policy.

Peter N. Talbot, a witness for the defendant, testified: " I am a son of defendant. The next day, I think, I saw my father. He said he insured Greeley's life, payable to the defendant and his heirs."

S. P. Talbot, a witness for the defendant, testified: " I am a son of the defendant, and know Adicks. My father told me that he had insured Greeley's life for the benefit of himself and his heirs."

The defendant rested.

The plaintiff introduced W. B. Malloy, who testified: " I was present when the note was executed. Adicks was soliciting Greeley for insurance. He asked Talbot, the defendant, to sign the note. He said he would not do this unless he had some insurance. He asked me to bear witness that he requested the policy to be made payable to him. He said that his son was under age; that unless the policy was made payable to him he would not sign the note. That was for the first premium. That is the only note that he signed or agreed to pay, and all that he agreed to pay. I was present all the time, but did not hear anything about heirs. I knew nothing about getting a credit for $20 for the payment of $5. I was present when Horace Greeley signed the application. Don't know whether the old man signed. He was present when Horace Greeley signed."

Upon - cross-examination, he said: " I was employed by Adicks to look up people. There is a little unsettled business between us. Greeley got out of the buggy. The note and application were written in the road, on back of buggy."

The defendant introduced Horace Greeley Talbot, who testified: "I signed the application on December 18, 1890, My father was not present. I told Adicks that if he would not take my note I did not want the policy. My father said, if he would have the policy made payable to him and his heirs, executors, etc., he would give a note. The policy was not made as he wished it. When the policy was received my father said he had nothing to do with it. Adicks said at another time if father would give him $5 he would give him a credit of $20."

On cross-examination he said: "His father did not sign the application. The policy was sent to him in January or February, shortly after its date. Adicks delivered the policy to me in person. My father did not think that it was for him. The reason my father would not accept it was because it was not made payable to him, his heirs, etc. That was one reason. He told me to keep it. Adicks told me that was my policy."

The plaintiff resumed: "H. F. Adicks said the note was made in the road near Talbot's house. Application same time and place."

The plaintiff asked the witness what premiums the defendant agreed to pay, and what premiums the young man. The defendant objected. The objection was sustained, and the plaintiff excepted. The plaintiff stated that he expected to prove by the witness that the first premium represented by the note was the only premium that the defendant was to pay, and that the son was to pay all the other premiums.

The witness further said: "I am not indebted to Malloy, except that he has an interest in a note that I hold for $25 or $30."

The plaintiff, in apt time, requested the Court to charge the jury, among other things—

"2. That it was incumbent on the defendant at once to notify the company or its agents that he objected to the policy.

" 3. That upon the defendant's own testimony he did not object to the policy until after the maturity of the note, and that he must therefore be deemed to have waived the form of the policy as to the party to whom it was payable.

" 4. That upon its face, the policy of insurance which was introduced by the defendant was a valid policy, and that by its terms, if the assured Horace Greeley Talbot had died during the life of the policy, that is, the first year of the policy, and up to this time, the amount of the policy would be payable to the defendant, and he could have recovered it.

" 5. That this policy was a valid consideration for the note of the defendant.

" 12. That if the jury shall believe that the payee of the note has advanced the amount of the premium to the company for the policy, this is a sufficient consideration for the note, without regard to the fact that the policy was made payable to the father and after his death to the son and his executors and administrators, etc.

His Honor refused to give the instructions, and charged the jury as follows :

" If the jury believe from the evidence that the defendant gave his note for $97.65 to the plaintiff, with the agreement and understanding that he was to receive a policy payable to him and his heirs, and that such policy was not delivered to him, that the policy as made was delivered to his son and not accepted by the defendant, then you will answer the second issue, Yes." The plaintiff excepted.

The Court charged the jury : " That if they believed that defendant gave his note to the plaintiff because his son was not of age, and that a policy was made and delivered as agreed upon, then you will answer the second issue, No." The plaintiff excepted.

The jury found the verdict on the first issue in favor of the plaintiff, by consent, and the second issue in the affirmative.

RODDEY *v.* TALBOT.

Judgment for the defendant, and appeal by the plaintiff.

*Messrs. J. W. Hinsdale* and *Samuel H. MacRae* for plaintiff (appellate).
*Messrs. George M. Rose* and *Thos. H. Sutton* for defendant.

AVERY, J.: The benefit of the policy for the year, with the privilege of continuing it in force for the defendant's lifetime, constituted a partial consideration for the note. The acceptance of this benefit until the maturity of the note, with full notice of the modification of the original agreement, was a waiver of objection to the policy in the form in which it was issued. To lend our sanction to the contention of the defendant would give him all of the advantage of a beneficiary under the policy held by the assured for him, even though his purpose may have been, by apparent acquiescence, to place himself in a position to recover in case of the death of the assured, while he entertained the purpose during the interval to repudiate the contract in case his son should survive the maturity of the note. If defendant's conduct did not estop him, it was at least a waiver of the right to object when he failed to give notice of such objection within a reasonable time after acquiring knowledge of the precise terms of the policy delivered to the assured. That the note was given to the agent as an individual, instead of to the company, does not affect the principle. If the plaintiff's money paid for the benefit that he silently accepted, it was not less a fraud to repudiate it than one payable to the insurer. The delivery to the assured was sufficient, and the failure to object must be construed as an acceptance of its benefits. There was error in the charge given and in the refusal of instruction asked, for which a new trial must be granted.                                New Trial.